# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1856, AT DEDHAM.

PRESENT :

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. THERON METCALF,
HON. GEORGE T. BIGELOW, } JUSTICES.
HON. BENJAMIN F. THOMAS,

GEORGE H. BRIGHAM & another *vs.* BENJAMIN F. EDMANDS.

A commanding officer of the volunteer militia has no authority to order the annual encampment, required by statute, to be held on land of a private person, without his consent; and if the troops occupy it without such consent, the officer is liable as a trespasser though acting in good faith.

ACTION OF TORT for breaking and entering the plaintiffs' close in Quincy, known as the Mount Wollaston Farm, with men and horses, on the 1st of August 1854, and trampling down the grass, and digging up, breaking and injuring the soil. The parties submitted the case to the court upon the following statement of facts :

" The plaintiffs were the lessees of the premises, and in pos-

session thereof. The defendant was major general in command of the first division of the volunteer militia of Massachusetts; and, as such officer, was ordered by His Excellency the Governor of the Commonwealth to order the said division into camp at the time named in the writ. The defendant had not, in fact, authority or license from the plaintiffs to hold said encampment on the premises. But he believed he was acting under such license and authority; and his mistake was not corrected until it was too late to promulgate legal orders for an encampment elsewhere during that year. The place selected was in every respect proper and suitable for said encampment, and one where as little damage would occur as at any that could be selected. The encampment was held there at the time named in the writ. The defendant acted without malice or any actual wrong intent, and no further damage was done to the premises than necessarily resulted from the reasonable use thereof for the said purpose.

" If the defendant had a right by law to select, take and enter upon the premises for the purpose aforesaid, the plaintiffs are to become nonsuit; if not, a judgment is to be rendered for the plaintiffs for one dollar damages and costs."

*R. H. Dana, Jr. & J. Q. Adams,* for the plaintiffs.

*E. Wilkinson,* for the defendant. The volunteer militia are required by law to perform three successive days' duty in camp, between the middle of July and the middle of October in each year. *Sts.* 1849, *c.* 218, § 2; 1853, *c.* 174, § 1. The defendant, as commander of a division duly ordered into camp, was required by law to designate the place for holding the encampment. *Sts.* 1849, *c.* 218, § 2; 1851, *c.* 302, § 1. Every commanding officer, when on duty, is authorized to ascertain and fix necessary bounds and limits to his parade, within which no spectator shall have a right to enter without leave. The only restriction on this power is that he shall not include any road on which people travel, so as to prevent their passing. Rev. Sts. *c.* 12, § 80. The facts contained in the agreed statement show that this duty was performed by the defendant in good faith · that the place selected was every way suitable, and the damages

merely nominal; and that he honestly supposed there was no objection to the use of the *locus in quo*, on the part of the plaintiff, till too late to make a change. Here then was a case where private right should yield to public convenience. 2 Kent Com. (6th ed.) 338.

Such temporary use of private property for public trainings would seem to be in accordance with the usage of the country from its earliest settlement. Militia organizations and trainings, in large and small bodies, are among our earliest institutions. The citizens have always been required to perform service therein without compensation. The right of using suitable fields for training the militia seems to have been taken for granted, and no mode of remuneration for such use has ever been provided. The people have grown up a nation of citizen soldiers. And militia trainings have been treated as public operations for the common defence, to which private rights of person and property are reasonably subservient. The present action is certainly one of novel impression.

Here was no appropriation of private property, within the meaning of art. 10 of the Declaration of Rights. It was a mere temporary occupation of the *locus in quo*, necessarily incident to the performance of a great public duty, under legislative sanction. The plaintiff was no more deprived of his property, than the soldiers who trained on that occasion were of their lives or liberties. The legislative enactment under which the defendant acted is analogous to those acts authorizing various public officers to enter upon private property and make surveys, for railroads, canals and highways, and to establish town, county and state lines, and erect monuments thereon. *Winslow* v. *Gifford*, 6 Cush. 327. It stands upon grounds as tenable as those acts which restrain the owner in the unlimited use of his property where the public convenience requires it. *Commonwealth* v. *Tewksbury*, 11 Met. 55. *Cushman* v. *Smith*, 34 Maine, 247.

The defendant's acts cannot be deemed violations of arts. 17, 27, 28 of the Declaration of Rights. Here was no quartering of soldiers in a house. The defendant acted entirely in pursuance of legislative enactments. His military power was exercised

in exact subordination to and governed by the civil authority, as expressed by the legislature. The only question is as to the validity of the law under which he acted.

BIGELOW, J.   The ground on which the defendant seeks to justify the acts of trespass alleged in the declaration is certainly novel.   Since the first organization of the militia of this commonwealth under the Constitution, c. 2, art. 10, no right to use private property, in time of peace, without the assent of the owner, for the purpose of parading, exercising or training troops, has ever heretofore been recognized or asserted.   On the contrary, we believe the uniform usage has been to perform these duties, when required by law, either in the streets and highways, and upon the public commons and training fields, or upon the land of individuals under express license from the owners.   No new power is conferred on officers of militia by *Sts.* 1849, *c.* 218, and 1851, *c.* 302, authorizing them to designate the places where the military duties therein prescribed are to be performed.   Similar authority has long been vested in commanding officers.   *St.* 1809, *c.* 108, §§ 18, 25.   Rev. Sts. *c.* 12, § 78.   The defence is therefore not maintained by usage or upon precedent.

It is equally without foundation in principle.   The defendant claims the right, as commander of a division of militia, to designate, at his discretion, the land of any individual, lying within the limits of his command, which he may deem suitable for the purpose, as the place for holding an encampment authorized by statute, and, without the assent of the owner, to take possession of and occupy the land so designated for three successive days, at any time " between the middle of July and the middle of October in each year," with the entire body of troops under his command.   *Sts.* 1849, *c.* 218, § 1; 1853, *c.* 174, § 1. Nor is this the full extent of the claim.   If he has the right so to occupy the land, he can exclude the owner from it, as well as all other persons not belonging to the troops so assembled because he is expressly authorized, " when on duty, to ascertain and fix necessary bounds and limits to his parade, within which no spectator shall have a right to enter."   Rev. Sts. *c.* 12, § 80 Such exclusive occupation of land necessarily includes the pos-

session, for the time being, of all the crops and other property on the premises, the damage to which, occasioned by a large body of men assembled for the purpose of being there exercised according to the statute, "in the whole routine of camp and field duty," would not be very slight or immaterial. Nor is it to be overlooked, if this right exists, that there is no limit to its exercise, by which to restrain an officer from annually designating the same premises, and occupying them for the same purposes for any number of successive years. The statement of such a claim is sufficient to refute it.

This therefore is not a case where there is a right to an incidental, temporary or occasional use of private property, rendered necessary in the performance of a public duty, and where the beneficial possession of the owner is not substantially interfered with, as is the case in entering on land for the purpose of making surveys for highways or railroads, or in perambulating the boundaries of towns. But it is a claim to an exclusive appropriation, to a specific public use, of the property of an individual, for a distinct period of time, depriving the owner of its actual possession and enjoyment, and exposing it to necessary and essential damage. Such a right cannot be exercised except under the authority of the legislature, expressed in clear and distinct terms, or by necessary implication, and with suitable provisions for compensation to the persons whose property may be so appropriated or injured. Declaration of Rights, art. 10.

There is nothing in the statutes under which the defendant acted, which conferred on him any power thus to appropriate private property. His acts were therefore wholly unauthorized and without justification. *Judgment for the plaintiffs.*